DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Toledo Municipal Court which, following a jury trial, found appellant, Edward Emery, guilty of criminal trespass, in violation of Toledo Municipal Code ("TMC") section 541.05(A), which is identical to R.C. 2911.21, and criminal damaging, in violation of TMC 541.03(A)(1), which is identical to R.C. 2929.06. For the reasons that follow, we affirm the decision of the trial court.
Appellant raises the following assignments of error:
"ASSIGNMENT OF ERROR NUMBER ONE
 "THE JURY VERDICT IN THIS CASE WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE (OR ALTERNATELY THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT).
"ASSIGNMENT OF ERROR NUMBER TWO
 "DEFENDANT'S MOTION FOR DIRECTED VERDICT OF ACQUITTAL SHOULD HAVE BEEN GRANTED UPON DEFENDANT'S MOTION FOLLOWING THE CLOSE OF THE PROSECUTOR'S CASE (AS TO THE CRIMINAL DAMAGING CASE).
"ASSIGNMENT OF ERROR NUMBER THREE
 "IT WAS ERROR FOR THE COURT TO HEAR THE PETITION TO DISQUALIFY OF [sic] APPELLANT WITHOUT PRIOR NOTICE AND OPPORTUNITY TO BE HEARD THEREIN (AND REFUSAL TO GRANT SUCH MOTION).
"ASSIGNMENT OF ERROR NUMBER FOUR
 "IT WAS ERROR OF THE COURT AND IT IS CRUEL AND UNUSUAL PUNISHMENT UNDER THE PROVISIONS OF THE U.S. AND OHIO CONSTITUTION FOR A DEFENDANT TO BE SENTENCED TO INCARCERATION FOR A PERIOD OF 150 DAYS HEREIN (ON THREE MISDEMEANOR CHARGES) WHEN HE HAS NO SERIOUS PRIOR CRIMINAL RECORD OF FELONIES OR OF VIOLENT ASSAULT.
"ASSIGNMENT OF ERROR NUMBER FIVE
 "THERE WAS INSUFFICIENT EVIDENCE TO FIND THE DEFENDANT GUILTY OF VIOLATING TMC SECTION 536.05 [sic] (SECTION CRIMINAL DAMAGING) AND OF TMC SECTION 2909.10 [sic] (CRIMINAL TRESPASSING).
"ASSIGNMENT OF ERROR NUMBER SIX
 "THE STATUTES UNDER WHICH APPELLANT WAS CHARGED, AND THE CHARGED CONDUCT OF APPELLANT INVOLVED IN ALL CASES SUBJECT OF THIS APPEAL ARE CONSTITUTIONALLY UNENFORCEABLE.
"ASSIGNMENT OF ERROR NUMBER SEVEN
 "IN TRIAL THE COURT ERRED IN ADMITTING EXHIBITS 2, 3, AND 4 (OF THE APPELLEE CITY OF TOLEDO — THE VIDEO TAPES)
"ASSIGNMENT OF ERROR NUMBER EIGHT
 "THE COURT ERRED IN FAILING TO GRANT APPELLANT AN OPPORTUNITY OT [sic] BE HEARD ON THE ISSUE OF BAIL AND STAY OF SENTENCE PENDING APPEAL AND ALSO ERRED IN DENYING THE APPELLANT THE RIGHT TO STAY AND/OR SAME AT THE TIME OF SENTENCING.
"ASSIGNMENT OF ERROR NUMBER NINE
 "THE COURT ERRED BY PERMITTING TESTIMONY AS TO EVENTS BETWEEN APPELLANT AND APPELLEE CONSIDERABLY PREDATING THE ALLEGED VIOLATIONS.
"ASSIGNMENT OF ERROR NUMBER TEN
 "IT WAS PLAIN ERROR FOR THE COURT TO PERMIT DEBRA BENNETT'S TESTIMONY REGARDING HER UNFOUNDED AND UNCHARGED ALLEGATIONS THAT APPELLANT WAS RESPONSIBLE FOR HER PREVIOUS NUMBER OF FLAT TIRES AND OTHER VANDALISM TO HER HOME IN LIGHT OF THE FACT THAT SHE DID NOT PERSONALLY WITNESS ANY SUCH ACTIVITY.
"ASSIGNMENT OF ERROR NUMBER ELEVEN
 "THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT'S MOTION TO CONTINUE THE TRIAL SCHEDULED FOR AUGUST 15, 2001.
"ASSIGNMENT OF ERROR NUMBER TWELVE
 "THE COURT ERRED IN NOT RULING UPON OR CONSIDERING THE APPELLANT'S MOTION FOR ACQUITTAL AFTER THE JURY VERDICT OF GUILTY.
"ASSIGNMENT OF ERROR NUMBER THIRTEEN
 "THE COURT ERRED IN NOT GRANTING THE JUDGMENT OF ACQUITTAL IN THIS CSE [sic] OTHERWISE PROCEEDING WITH THIS CASE IN VIEW OF THE COMPLAINTS ON CRIMINAL DAMAGING BEING DEFECTIVE."
 MANIFEST WEIGHT AND SUFFICIENCY
We will consider together appellant's first assignment of error regarding manifest weight of the evidence and fifth assignment of error regarding sufficiency of the evidence. Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts. State v. Thompkins (1997), 78 Ohio St.3d 380,386. "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. Id. In making this determination, an appellate court must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Whereas, under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Thompkins at 387. The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175.
With respect to criminal trespass, TMC 541.05(A)(1) states that "No person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another * * *." With respect to criminal damaging, TMC 541.03(A)(1) states that no person shall knowingly or recklessly, by any means, cause, or create a substantial risk of physical harm to any property of another without the other person's consent.
Appellant argues that the evidence was insufficient to establish that appellant was guilty of criminal trespass or criminal damaging and, alternatively, that the conviction was against the manifest weight of the evidence. We disagree.
The victim, Debra Bennett, testified that she had been appellant's next door neighbor for fifteen years and had disputes with him since moving into her house. The victim testified that she told appellant numerous times to stay off of her property and to leave her alone. She also testified that she has a "no trespassing" sign posted. In March 2001, prior to the dates of the incidents at issue, Bennett bought a video camera that was equipped with an infrared sensor which activated an alarm when it sensed body heat. The camera was mounted on Bennett's house and directed toward appellant's property and her driveway. The camera was connected to her television and VCR and was always recording. Bennett testified that she maintained the recorded video tapes.
Bennett also testified that on March 14, 2001, at approximately 8:45 p.m., she saw appellant on her television screen approaching her vehicle "with something in his hand." Bennett testified that she watched him go to her car and put a hole in the back tire. When he left the scene, she removed the tape from the VCR and immediately went out to her car. She stated that she could hear the air coming out of the tire at a fast rate. Bennett proceeded directly to the police department. The tire was about flat when she got to the police station which was approximately four or five blocks from her house. The tire was admitted into evidence with a puncture hole in it. On cross-examination, Bennett testified that she only saw appellant kneel down by her tire, but did not actually observe him puncturing it. Appellant's counsel asked if it was "at least theoretically possible that [appellant] could have been looking at the rear tire because it was punctured." Bennett responded, "No, because the air was coming out fast enough, it would have been flat like that."
Bennett also testified regarding incidents that took place on March 19, 2001 and March 20, 2001. At approximately 6:30 a.m. on March 19, Bennett was awakened by the camera's alarm. On her television, Bennett observed appellant exit his house, walk around his property for a period of time, and then enter her property and walk by her front window. Bennett's daughter, Kelly Bennett, also testified that she saw appellant on the television entering her property on March 19, 2001.
Bennett and her daughter both testified that on March 20, 2001, at approximately 6:30 a.m., they were again awakened by the camera's alarm. Bennett and her daughter observed appellant's actions on television for a time and then went downstairs to their front window to watch appellant. Caught on tape, Bennett testified that appellant stood on the city sidewalk on her property and dumped a shovel of dog feces into her yard. Bennett, however, additionally testified that, although it was not seen on tape, she observed in person, through her front window, appellant enter her property to dump dog feces, totaling approximately eight or nine piles worth. Kelly Bennett also testified that appellant walked on their grass to dump the feces.
The video tapes of the three incidents were played for the jury. Bennett testified that they were the original tapes that were running at the time of the incidents to which she testified. Bennett also testified that each tape was immediately removed from the VCR following the incidents in question and new tapes were put into the VCR. On cross-examination, Bennett testified that as tapes became full, they were removed from the VCR and dated.
Based on the foregoing testimony, we find that any rational trier of fact could have found that the essential elements of the crimes were proven beyond a reasonable doubt. Bennett and her daughter both testified that Bennett told appellant on numerous occasions to stay off of Bennett's property. Nevertheless, both Bennett and her daughter testified that they witnessed appellant enter their property on March 19 and 20, 2001. With respect to the criminal damaging, appellant argues that because Bennett only saw him kneel down by her tire, but did not actually witness him puncture the tire, there was insufficient evidence to convict. We disagree. Bennett testified that appellant approached her vehicle with something in his hand, knelt down near her tire, and then leave. Immediately thereafter, Bennett's tire was rapidly losing air and was flat by the time she drove the four or five blocks to the police station. Based on the evidence presented, the jury could conclude that Bennett's tire was punctured by appellant when he knelt by her tire.
Accordingly, we find that there was sufficient evidence presented upon which the jury could have relied to convict appellant of the charges. We also find that based upon the ample evidence presented in support of conviction, the jury clearly did not lose its way or create a manifest miscarriage of justice. Appellant's first and fifth assignments of error are therefore found not well-taken.
 JUDGMENT OF ACQUITTAL
We will consider appellant's second, twelfth, and thirteenth assignments of error together, insofar as they each allege error concerning appellant's request for a judgment of acquittal.
Appellant argues in his second assignment of error that the trial court erred in not granting his motion for judgment of acquittal, pursuant to Crim.R. 29(A), with respect to the criminal damaging charge. We disagree. Crim.R. 29(A) provides that a judgment of acquittal should be entered "if the evidence is insufficient to sustain a conviction of such offense or offenses." We have already determined that the evidence was sufficient to convict appellant of the criminal damaging charge. Accordingly, appellant's second assignment of error is found not well-taken.
Appellant argues in his twelfth assignment of error that the trial court erred in not ruling on his motion for acquittal made after the return of the jury verdict. Initially, we note that the trial court, in fact, did deny appellant's motion for a "decision notwithstanding the verdict" that was made following the jury's verdict. Moreover, to the extent that appellant's motion could be construed to be a Crim.R. 29(C) motion for acquittal, we find that the trial court properly denied it. As stated above, there was sufficient evidence presented regarding the criminal damaging charge. As such, appellant was not entitled to a judgment of acquittal. Appellant's twelfth assignment of error is found not well-taken.
Appellant argues in this thirteenth assignment of error that the trial court erred in not granting the judgment of acquittal with respect to the criminal damaging charge on the basis that the complaint was defective. Specifically, appellant asserts that the complaint failed to specify that appellant knowingly or recklessly caused physical harm to "any property of another."
The purpose of an indictment is to compel the state to set forth all material facts constituting the essential elements of an offense in order to provide the defendant with adequate notice and an opportunity to defend. State v. Sellards (1985), 17 Ohio St.3d 169, 170. The criminal damaging complaint in this case stated that appellant, on or about March 14, 2001, violated TMC 541.03(A)(1), in that he knowingly caused or created a substantial risk of physical harm "to property of victim * * * to wit: Edward Emery did damage affiant's tire on her 1991 white Saturn, while the vehicle was parked in affiant's driveway * * *. Defendant did puncture the tire with an unknown object without affiant's consent." The complaint clearly contained the critical components necessary to give appellant due notice, with specificity, of the crime charged, the elements of the offense, the date of the offense, the location, the victim, and the statute violated. We therefore find appellant's thirteenth assignment of error not well-taken.
 MOTION TO DISQUALIFY TRIAL JUDGE
Appellant argues in his third assignment of error that the court of common pleas erred in failing to have a hearing on appellant's petition to disqualify the trial court judge and in failing to grant said petition. We disagree. R.C. 2701.031(E) does not require that the common pleas court judge who received the affidavit of disqualification to conduct a hearing prior to making his or her determination.
We also find that the common pleas court properly denied appellant's affidavit of disqualification. Appellant sought disqualification on the basis that the trial judge was biased and prejudiced against him because he and the trial judge were affiliated with different political parties, appellant was running for Congress, and because the trial judge previously presided in another criminal case against appellant.
Ordinarily, a judge will not be disqualified "based simply on the business, social, or political prominence of a party * * *." In reDisqualification of Jackson (1998), 84 Ohio St.3d 1232. As such, we find that appellant failed to establish bias or prejudice on the basis of the political party affiliation. Additionally, the sole fact that the trial court previously imposed a sentence against appellant, who was convicted in another criminal matter and was found to have committed a probation violation, does not in and of itself establish bias or prejudice. Appellant's third assignment of error is therefore found not well-taken.
 SENTENCING
Appellant argues in his fourth assignment of error that the trial court's imposition of maximum sentences, ordered to run consecutively, was a cruel and unusual punishment in light of the type of activity involved. We disagree. The sentences imposed were within applicable statutory levels. Moreover, we find that the trial court clearly considered all the statutory factors in determining appellant's sentence. Based on appellant's record and the facts in this case, we find that the sentences were proportionate to the crimes committed and that the trial court did not abuse its discretion in imposing maximum, consecutive sentences.
 CONSTITUTIONALITY OF CRIMINAL STATUTES
Appellant argues in his sixth assignment of error that the statutes at issue in this case are unconstitutionally vague insofar as they fail to sufficiently define the concept of knowingly. Appellant is incorrect. "Knowingly" is adequately defined in R.C. 2909.22(B) and TMC 501.08(b). Appellant's sixth assignment of error is therefore found not well-taken.
 ADMISSION OF VIDEO TAPES
Appellant argues in his seventh assignment of error that the trial court erred in admitting the video tapes into evidence. We find that the video tapes were properly authenticated by Bennett, and her daughter, and that the trial court did not abuse its discretion in admitting the tapes. See State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus.
 BAIL AND STAY OF SENTENCE PENDING APPEAL
Appellant argues in his eighth assignment of error that the trial court erred in failing to grant him an opportunity to be heard on the issue of bail and erred in not granting a stay of sentence pending appeal. Initially, we note that appellant relies on a version of Crim.R. 46 that is no longer in effect and was not in effect at the time of appellant's sentencing.
Crim.R. 32(A) requires that sentences shall be imposed without unnecessary delay. The trial court immediately imposed sentence upon appellant and ordered it enforced. As such, there was no opportunity for bail to be set pending sentencing. Additionally, under the circumstances in this case, we find that the trial court did not abuse its discretion in denying appellant's request for stay of execution of sentence pending appeal. See Christopher v. McFaul (1985), 18 Ohio St.3d 233. Appellant's eighth assignment of error is therefore found not well-taken.
 ADMISSION OF TESTIMONY
Appellant argues in his ninth assignment of error that the trial court erred by permitting testimony as to events between appellant and Bennett that predated the charges in this case. Without specifying the exact testimony appellant considers prejudicial, appellant asserts that Bennett's testimony "left a distinct impression that there were prior convictions of the Appellant." Upon review of the trial transcript, we find no testimony that would leave an "impression" that appellant had been previously convicted. Rather, Bennett merely testified that she had known appellant for fifteen years and had a poor relationship with him.
Nevertheless, insofar as appellant failed to object to Bennett's testimony, any error is waived, but for plain error. State v. Underwood
(1983), 3 Ohio St.3d 12, syllabus. In order to establish plain error, appellant must show that but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus. We find that appellant failed to establish plain error. Appellant's ninth assignment of error is therefore found not well-taken.
Appellant argues in his tenth assignment of error that it was prejudicial to allow Bennett to testify that on every occasion she left her car in the driveway, approximately seventy-five times, she got a flat tire. Appellant failed to object to this testimony at trial. Given the video tape evidence against appellant with respect to the criminal damaging charge, and the fact that Bennett never implicated appellant for these prior flat tires, we find that appellant has not established that, but for this testimony, the outcome of the trial clearly would have been different. See Id.
Additionally, we note that appellant questioned Bennett at length concerning her prior flat tires and counsel, in fact, implied that appellant was suspected. We find that appellant cannot appeal an alleged error that he invited. Lester v. Leuck (1943), 142 Ohio St. 91, paragraph one of the syllabus. Appellant's tenth assignment of error is therefore found not well-taken.
 MOTION TO CONTINUE TRIAL DATE
Appellant argues in his eleventh assignment of error that the trial court abused its discretion by not granting appellant's motion to continue the trial date. The grant or denial of a continuance lies within the sound discretion of the trial court. State v. Mason (1998),82 Ohio St.3d 144, 155. Although Attorney George Royer was unavailable for trial, appellant's trial counsel indicated that he was prepared to proceed. Accordingly, we find that the trial court did not abuse its discretion in denying appellant's request for an additional continuance. Appellant's eleventh assignment of error is therefore found not well-taken.
 CONCLUSION
On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Toledo Municipal Court is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., James R. Sherck, J. and Richard W. Knepper, J. CONCUR.